*State of Maryland v. Damien Gary Clark*, No. 1614, September Term, 2021. Opinion by Graeff, J.

**THE RIGHT TO ASSISTANCE OF COUNSEL – COMMUNICATION WITH ATTORNEY**

In *Geders v. United States*, 425 U.S. 80 (1976), the Supreme Court held that an order restricting an accused from consulting with counsel "about anything" during a lengthy, overnight recess, over objection by defense counsel, denied the defendant his Sixth Amendment right to counsel. In this case, counsel did not object to the court's instruction not to confer with counsel during an overnight recess, and Clark contends that, due to this failure to object, he received ineffective assistance of counsel.

In the context of a post-conviction claim that a defendant received ineffective assistance of counsel, we do not address the merits of trial court error. Rather, we look at whether the petitioner satisfied his burden to show (1) "that his or her counsel performed deficiently" and (2) "that he or she has suffered prejudice because of the deficient performance." *State v. Syed*, 463 Md. 60, 75, *cert. denied*, 140 S. Ct. 562 (2019).

A showing of prejudice is not required when a defendant is denied his right to counsel. An instruction not to communicate, however, by itself, does not establish a Sixth Amendment violation. Rather, to show a deprivation of the right to counsel in this context, there must be a showing that the instruction actually prevented the defendant and defense counsel from communicating. Here, there was no showing of an actual deprivation of appellee's right to counsel, given that there was no objection to the instruction and there was no other evidence showing that appellee would have talked with counsel absent the instruction. Accordingly, appellee was not entitled to a presumption of prejudice.

Absent a presumption of prejudice, Clark had the burden to show that counsel's failure to object to the instruction was prejudicial. He failed to do so. Accordingly, the circuit court erred in granting his petition for post-conviction relief.

Circuit Court for Howard County
Case No. C-13-CR-18-000001

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1614

September Term, 2021

_____

STATE OF MARYLAND

v.

DAMIEN GARY CLARK

_____

Graeff,
Nazarian,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.
Dissenting Opinion by Nazarian, J.
_____

Filed:  July 28, 2022

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In February 2019, Damien Gary Clark, appellee, was tried by a jury in the Circuit Court for Howard County on charges of second-degree murder, attempted second-degree murder, and several counts of assault. Appellee testified on his own behalf, and at the conclusion of his direct testimony, the court instructed him not to speak with anyone, including his attorney, during the overnight recess. Defense counsel did not object to the court's instruction. The jury convicted appellee of voluntary manslaughter, attempted second-degree murder, and two counts of second-degree assault. The court sentenced appellee to 50 years' incarceration. On appeal to this Court, we affirmed appellee's convictions in an unreported opinion. *See Clark v. State*, No. 486, Sept. Term, 2019 (filed June 29, 2020).

Appellee then sought post-conviction relief. After a hearing, the post-conviction court granted appellee a new trial, finding that he received ineffective assistance of counsel due to counsel's failure to object to the trial court's no-communication instruction. The State filed an application for leave to appeal, which we granted.[1]

The State appeals and presents three questions for this Court's review, which we have consolidated into the following question:

> Did the circuit court err in granting appellee a new trial based on a finding that he received ineffective assistance of counsel?

For the reasons set forth below, we shall reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

---

[1] Appellee filed a cross-application for leave to appeal, which we denied.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this appeal, we need not discuss the underlying crimes in detail. We do note, however, that the crimes were serious. On December 25, 2017, appellee stabbed two men, killing one of them.

Appellee testified on his own behalf on the fourth day of trial. After he completed his direct testimony, with the State's cross-examination scheduled to begin the next day, the court instructed appellee, as follows:

> [THE COURT]: You can't talk to anybody about the case this evening even [trial counsel] and [the paralegal]. Okay?
>
> [MR. CLARK]: Okay.
>
> [THE COURT]: You can't talk to anybody. It sounds counter intuitive.
>
> [MR. CLARK]: Yes.
>
> [THE COURT]: You can't talk to your own attorney about the case.
>
> [MR. CLARK]: I understand, sir.

Defense counsel did not object to the court's instruction.

On appeal from his convictions, appellee argued, among other things, that the trial court erred in instructing him that he could not speak with his attorney during the overnight recess. *Clark*, slip op. at 11–12. He asserted that this order denied him his Sixth Amendment right to counsel "after a critical day of testimony." *Id.* at 13. The State argued that appellee had failed to preserve this issue for appeal because he failed to object to the court's instruction, and instead, he acquiesced to it. *Id.*

2

In our unreported opinion, we concluded that the argument was not preserved for review. *Id.* We noted that unpreserved claims of error generally are best addressed through an ineffective assistance of counsel claim at post-conviction proceedings. *Id.* at 14. We affirmed appellee's convictions. *Id.* at 33.

Appellee subsequently filed a petition for post-conviction relief alleging, among other things, that he received ineffective assistance of counsel due to trial counsel's failure to object to the trial court's instruction that he not speak to counsel during the overnight recess between his direct and cross-examination. He argued that counsel's failure to object was not a strategical error, but rather, it was due to ignorance of the law. Appellee also argued that trial counsel's failure to object prejudiced him because "the court impinged upon his constitutional right to counsel, which [trial counsel] permitted by failing to object."

On July 29, 2021, the court held a hearing. Trial counsel testified that, at the time of appellee's trial in 2019, he had been practicing criminal law for more than 20 years, and he had worked on 30–40 homicide cases. Counsel acknowledged, however, that at the time of trial, he was not specifically aware of *Geders v. United States*, 425 U.S. 80, 88–89 (1976), a case in which the United States Supreme Court held that an order restricting an accused from consulting with counsel "about anything" during a lengthy overnight recess was improper. When asked why he did not object to the court's instruction not to communicate with counsel after appellee's direct testimony, counsel stated that he felt no need to object because there was nothing to discuss with appellee:

3

At the time, I didn't think there was anything for us to talk about that evening. We had talked that morning, I guess when I delivered the suit to him. We talked during the trial, right before lunch. I believe, you know, at every break. It's not like I can leave here and call him. You know, I can't call into [the jail] at that time, they have it now, because of all the COVID. So, the issue would have been, did I want to go back downstairs in the sheriff's lockup and see him that day? And before we went down—at the end of each day, I would always ask him if he had any questions or anything like that. So, the answer is that I just didn't have anything to go over with him because I thought he was doing good on the witness stand.

On cross-examination, counsel stated that he had prepared appellee for his testimony, stating that they had practiced approximately eight to ten hours. At the end of appellee's testimony, counsel had no concerns that needed to be addressed. He stated:

We talked all day. We talked in the morning, every break, lunch break or break to do this and that and sit at the trial table, go back and forth. After lunch before we sat down, we talked. O[r] if we wanted to go down, we'd go down and talk to him. At the end of the incident, you know, at the end of that day, I think he was sitting up here [on the witness stand] but I didn't have anything to ask him, and he didn't say, hey, I want to talk to you.

Counsel acknowledged that he should have objected to the court's instruction, but he reiterated that he did not have anything to say to appellee that he was prevented from saying to him, and appellee did not ask to speak to him. The following exchange then occurred:

[THE STATE]: Had [appellee] said, I want to speak to my attorney, would you have advocated on his behalf to –

[TRIAL COUNSEL]: Absolutely.

[THE STATE]: And just so I have–just so this record is clear in terms of what was happening at that point in time in the trial, it was the end of a day of testimony, right? It was the end of the day. The attorneys were going home. [Appellee] was being returned to the Detention Center. And everyone was due to return first thing in the morning and start right away. Is that fair?

4

[TRIAL COUNSEL]: Yes.

[THE STATE]: And so, it wasn't a situation where we're taking a two-hour break for everyone to work on the case, right?

[TRIAL COUNSEL]: That's correct.

[THE STATE]: It was the end of the day. The day's work was over.

[TRIAL COUNSEL]: That's correct.

[THE STATE]: We all know at night attorneys might look over notes, et cetera, but he wasn't coming to your office that night. Is that fair?

[TRIAL COUNSEL]: No.

[THE STATE]: He was at the Detention Center.

[TRIAL COUNSEL]: And we can't call him.

[THE STATE]: All right. You couldn't even call him. And he went immediately back on the stand the next day. Is that your recollection?

[TRIAL COUNSEL]: Yes.

*          *          *

[THE STATE]: Okay. And do you recall the next morning before he testified whether he expressed any indication to you or [the paralegal] in your presence that he had questions of you or wanted to talk to you?

[TRIAL COUNSEL]: No. We had come back in the morning. The sheriff brought him out to sit at the table. . . . [The paralegal] who was assisting, and myself were sitting at the table, you know, are you okay? You know . . . we're going to do this. We're [going to] do that or whatever. We talked at the trial table with him.

[THE STATE]: All right. So, you actually communicated with him, but you just didn't talk about the substance –

[TRIAL COUNSEL]: Yes.

5

[THE STATE]: – of his testimony?

[TRIAL COUNSEL]: Yes.  Yeah.

*          *          *

[TRIAL COUNSEL]: When I read [the order] now, reading it at the post-conviction, I say wow, I should have objected but was I going to meet with him or say anything that night?  The answer is no.  And he didn't ask me.

Trial counsel's paralegal and appellee also testified at the post-conviction hearing. Neither one, however, testified regarding the trial court's instruction to appellee not to talk with anyone after his direct examination.

On September 28, 2021, the post-conviction court granted appellee's request for post-conviction relief.  It found that the trial court's instruction was inconsistent with the holding in *Geders*, 425 U.S. at 88–89.  The court summarized trial counsel's testimony during the post-conviction hearing, as follows:

> Trial counsel conceded in testimony that he "probably should have objected" to the trial court's instruction.  Trial counsel testified that he had spoken to [appellee] every morning before court started during the trial, and during breaks each day.  Trial counsel and [the paralegal] both testified that they had spent hours with [appellee] preparing for trial.  Trial counsel testified that he and [the paralegal] had practiced for hours questioning [appellee] so that he would be prepared for his direct and cross examination.  Trial counsel indicated that he felt [appellee] had done well with his direct examination, and that he did not have anything he needed to talk to [appellee] about overnight, and would have objected had he needed to speak to [appellee], or if [appellee] had indicated a need to speak to him.  In fact, trial counsel testified that the morning of the fifth day of trial he and [the paralegal] had asked [appellee] if he was alright and if he needed anything.  [Appellee] did not indicate that he needed to speak to trial counsel at that time.

6

After discussing the evidence, the post-conviction court found that counsel's performance was deficient, stating that there was no evidence of "a legitimate strategic or tactical reason for letting the instruction go." Although counsel did not believe that there was a need to talk with appellee that evening, the right to assistance of counsel belonged to appellee, not to trial counsel, and appellee may have wanted to consult with counsel, but he was not able to due to the court's instruction.

The post-conviction court also found that trial counsel's failure to object to the instruction prejudiced appellee "not only because he was deprived of his Sixth Amendment right to counsel during the overnight recess, but also because he was not able to raise the issue on appeal due to trial counsel's failure to object to the erroneous instruction." The post-conviction court held that Mr. Clark was entitled to a new trial on this ground.[2] The court stayed its ruling pending resolution on appeal.

On December 15, 2021, we granted the State's application for leave to appeal and denied appellee's cross-application.

**DISCUSSION**

The State contends that the circuit court erred in finding that appellee received ineffective assistance of counsel due to trial counsel's failure to object to the court's instruction that appellee not talk with anyone during the overnight recess between his direct

---

[2] The court also stated that trial counsel's motion for a new trial on different grounds was "untimely and inadequate," which constituted deficient performance. The court stated that, if not for its decision regarding the *Geders* issue, it "would recommend" that appellee be permitted to make a belated motion for a new trial. The State advised in its brief that it "has not challenged" the court's ruling in this regard.

7

and cross-examination. The State acknowledges, as it must, that a court's directive to an accused not to communicate with counsel during an overnight recess is improper pursuant to *Geders*, 425 U.S. at 88–89. It argues, however, that the court failed to properly assess the *Geders* claim "through *Strickland*'s ineffective-assistance lens."[3]

We begin our analysis by discussing the constitutional right implicated in this case. The Sixth Amendment to the United States Constitution provides that an accused individual "have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In 1976, in *Geders*, 425 U.S. at 81–82, the Supreme Court addressed the constitutionality of a court's instruction to the defendant not to discuss the case with anyone, including his attorney, during an overnight recess. Defense counsel objected to the instruction, stating that he "always ha[s] the right to talk to [his] client." *Id.* at 83 n.1. Counsel stated that he knew that he was not permitted to coach his client about what to say on cross-examination, but he wanted to discuss strategic matters with his client, including which witness to call next. *Id.* at 83 n.1. The trial court overruled the objection, and counsel stated that he and his client would obey the court's ruling and not communicate. *Id.*

The Supreme Court held that the trial court's instruction was unconstitutional, but it did so on narrow grounds. The Court specified its holding as follows:

> The challenged order prevented petitioner from consulting his attorney during a 17-hour overnight recess, when an accused would normally confer with counsel. We do not reach, and we do not deal with limitations imposed in other circumstances. We hold that an order preventing petitioner from consulting his counsel "about anything" during a 17-hour overnight recess

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

> between his direct- and cross-examination impinged upon his right to the
> assistance of counsel guaranteed by the Sixth Amendment.

*Id.* at 91.

The Supreme Court subsequently addressed an instruction to the defendant not to speak with his attorney during a 15-minute recess between direct and cross-examination. *Perry v. Leeke*, 488 U.S. 272 (1989). In holding that this instruction did not violate Perry's Sixth Amendment right to counsel, the Court noted that, although a defendant has a right to consult his attorney throughout the trial, the testifying defendant, when he becomes a witness, does not have a right to "have the testimony interrupted in order to give him the benefit of counsel's advice." *Id.* at 281. The break in *Perry*, a 15-minute recess at the end of direct examination, presented a "virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony." *Id.* at 283–84. The break in *Geders*, on the other hand, was "of a different character" because, during an overnight recess, an attorney and a client often discuss matters that go beyond the defendant's testimony, such as the availability of other witnesses, trial tactics, or even negotiating a plea bargain, and as such, the defendant should have unrestricted access to his or her attorney. *Id.* at 284. The Court stated that the distinction between the 15-minute recess in *Perry* and the overnight recess in *Geders* was "a thin one," but it was "a line of constitutional dimension." *Id.* at 280. The Court, therefore, held that the trial court's instruction did not violate the petitioner's right to counsel. *Id.* at 280.

*Perry* addressed the issue in the context of a federal writ of habeas corpus, and in addition to addressing whether Perry was denied his constitutional right to the assistance

9

of counsel, the Court addressed whether, to obtain relief, Perry had to show prejudice. *Id.* at 278-80. The Court concluded that he did not, stating that the actual denial of the assistance of counsel "is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." *Id.* at 280. The Court stated "that a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*." *Id.* at 278–79.

Given this caselaw, the State acknowledges that the court's instruction to appellee not to speak to counsel during the overnight recess was improper pursuant to *Geders*. It argues, however, that both *Geders* and *Perry* arose in a different posture from this case. In both those cases, counsel objected to the instruction, whereas in this case, defense counsel did not object to the instruction. Thus, neither of those cases involved a claim similar to that raised here, i.e., that counsel rendered ineffective assistance of counsel in failing to object to the instruction.

There is a different analysis for cases arising on direct appeal and those arising from a petition for post-conviction relief. In *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911– 12 (2017), the Supreme Court explained that a violation of the right to a public trial requires automatic reversal on direct appeal, but when it is raised as part of an ineffective assistance of counsel claim, it is still analyzed under the *Strickland* framework. The Court of Appeals has explained the Supreme Court's analysis, as follows:

> Citing finality interests, the Court noted that if a new trial is granted on direct appeal, "there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost." [*Weaver*, 137 S. Ct. at 1912]. In addition, reviewing courts are

10

in a better position to instruct trial courts on facts and legal principles to consider on remand. *Id.* Postconviction courts, by contrast, assess ineffective-assistance-of-counsel claims through the *Strickland* lens and do not address the merits of particular trial court errors. The *Weaver* Court reasoned that these differences justify imposing a higher standard for granting a new trial when a defendant raises a structural error on postconviction, rather than on direct appeal. *Id.*; *see also* [*Strickland v. Washington*, 466 U.S. 668, 693–94 (1984)] ("The [*Strickland*] standard [] reflects the profound importance of finality in criminal proceedings.").

*Newton v. State*, 455 Md. 341, 356–57 (2017), *cert. denied*, 138 S. Ct. 665 (2018). *Accord Ramirez v. State*, 464 Md. 532, 565–66 (2019), *cert. denied*, 140 S. Ct. 1134 (2020).

Thus, because this case is before us in the posture of review of a post-conviction claim of ineffective assistance of counsel, we do not address the merits of the trial court error. Rather, we address the claim through the lens of the test set forth in *Strickland v. Washington*. Under that test, a defendant seeking to prove ineffective assistance of counsel must prove two things: (1) "that his or her counsel performed deficiently," and (2) "that he or she has suffered prejudice because of the deficient performance." *State v. Syed*, 463 Md. 60, 75, *cert. denied*, 140 S. Ct. 562 (2019). Both prongs of the test must be shown to establish ineffective assistance of counsel. *In re Parris W.*, 363 Md. 717, 725 (2001).

When we are addressing an ineffective assistance of counsel claim, we are not required "to address both components of the inquiry if the defendant makes an insufficient showing of one." *Strickland*, 466 U.S. at 697. Here, we will not address the performance prong because, as explained below, we conclude that appellee failed to prove that he was prejudiced by counsel's failure to object to the court's instruction.

11

To establish prejudice, a defendant generally must show: (1) that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; or (2) that the result of the proceeding was fundamentally unfair or unreliable.'" *Syed*, 463 Md. at 86 (quoting *Newton*, 455 Md. at 355). In some contexts, however, prejudice is presumed. *Strickland*, 466 U.S. at 692. A presumption of prejudice applies in certain Sixth Amendment contexts, including situations where: "(1) the petitioner was actually denied the assistance of counsel; (2) the petitioner was constructively denied the assistance of counsel; or (3) the petitioner's counsel had an actual conflict of interest." *Ramirez v. State*, 464 Md. at 573.[4] *See also Perry*, 488 U.S. at 278–79 (Actual denial of counsel is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective.); *Wooten-Bey v. State*, 318 Md. 301, 306 (1990) (discussing *Perry*, but ultimately finding no *Geders* violation).

Appellee contends, and the dissent agrees, that the court's instruction, by itself, constituted a deprivation of his Sixth Amendment right to the assistance of counsel. Based on the conclusion that appellee was deprived of his right to counsel, they conclude that appellee is entitled to a presumption of prejudice. We disagree with the premise that there

---

[4] "Actual denial of the assistance of counsel occurs where 'counsel was either totally absent, or prevented from assisting the [petitioner] during a critical stage of the proceeding.'" *Ramirez v. State*, 464 Md. 532, 574 (2019), *cert. denied*, 140 S. Ct. 1134 (2020) (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984)). "[C]onstructive denial of the assistance of counsel occurs where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[.]'" *Id.* (quoting *Cronic*, 466 U.S. at 659).

12

was a showing of an actual deprivation of the right to counsel, and therefore, with the conclusion that a presumption of prejudice is warranted.

We agree with the State that an instruction not to communicate does not, by itself, establish a Sixth Amendment violation. Rather, to show a deprivation of the right to counsel in this context, there must be a showing that the instruction actually prevented the defendant and defense counsel from communicating.

In both *Geders* and *Perry*, defense counsel objected to the court's no-communication instruction. *See Geders*, 425 U.S. at 83 n.1 (Defense attorney argued that he had the right to confer with his client regarding "numerous strategic things that an attorney must confer with his client about."); *Perry*, 488 U.S. at 274–75 (Defense attorney moved for a mistrial after court's order). An objection to the instruction indicates that, "absent the court's instruction, Defendant would have met with his counsel." *Wallace v. State*, 851 So.2d 216, 220 (Fla. Dist. Ct. App.) (quoting *State v. Baldridge*, 857 S.W.2d 243, 252 (Mo. Ct. App. 1993)), *review denied*, 860 So. 2d 980 (Fla. 2003), *cert. denied*, 540 U.S. 1187 (2004).

Here, by contrast, there was no objection to the instruction, nor was there any showing that the court's instruction deprived appellee of the right to assistance of counsel. During the post-conviction proceedings, the issue was addressed, and trial counsel testified that he did not object to the instruction because he did not "think there was anything for [them] to talk about that evening." Appellee also testified during the post-conviction

13

proceedings, but he did not testify that he would have talked to counsel absent the court's instruction.

Other courts have held that, in the situation where a court instructs the defendant not to communicate with his attorney during a recess in the defendant's testimony, a claim that the court deprived the defendant of the right to counsel fails in the absence of an objection to the court's instruction, or other evidence that the defendant would have met with counsel but for the instruction. For example, in *United States v. Nelson*, 884 F.3d 1103, 1105 (11th Cir.), *cert. denied*, 139 S. Ct. 394 (2018), the court granted defense counsel's request, just before an overnight recess during the testimony of defendant Skillern, that counsel could speak to the defendant "about matters other than his testimony." On appeal, Skillern argued that the court deprived him of the assistance of counsel in violation of the Sixth Amendment, asserting that the court should have responded to counsel's request by stating, sua sponte, that he could discuss *any* subject with his attorney during the overnight break, including his testimony. *Id.* at 1106. The United States Court of Appeals for the Eleventh Circuit rejected that argument. *Id.* at 1110. It noted that the case presented several unsettled issues, including whether, because Skillern's lawyer asked for the instruction, the invited error doctrine prevented his challenge to the instruction. *Id.* at 1107–08. The court declined to address that issue, however, because there was no showing that "Skillern was [] actually deprived of his Sixth Amendment right to counsel." *Id.* at 1109. The court explained that "a condition precedent to a *Geders*-like Sixth Amendment claim is a demonstration, from the trial record, that

14

there was an actual 'deprivation' of counsel – *i.e.*, a showing that the defendant and his lawyer desired to confer but were precluded from doing so by the district court." *Id.* at 1109. Because "the record [was] entirely devoid of *any* indication – in *any* form – that Skillern or his attorney planned or wanted to confer about his testimony during the recess," Skillern had not "shown that he was actually deprived of his Sixth Amendment right to counsel," and he was not entitled to reversal of his convictions. *Id.* at 1110.

In *Wallace v. State*, 851 So.2d 216, 220 (Fla. Dist. Ct. App.), *review denied*, 860 So.2d 980 (Fla. 2003), *cert. denied*, 540 U.S. 1187 (2004), Wallace filed a petition for post-conviction relief, alleging that the trial court's statement that he could not confer with counsel during a lunch break amounted to a deprivation of his Sixth Amendment right to counsel. In rejecting this claim, the Third District Court of Appeals of Florida noted that "neither the record of the trial nor any other showing made by the defendant establishes or even intimates that either counsel or the defendant had any desire to consult during the critical time." *Id.* at 217 (footnote omitted). The court held that Wallace's "[S]ixth [A]mendment rights were not affected" because there was "'no evidence that appellant was deprived of a right that [he] sought to exercise.'" *Id.* at 217, 221 (quoting *Haney v. State*, 603 So. 2d 368, 378 (Ala. Crim. App. 1991), *aff'd sub nom. Ex parte Haney*, 603 So.2d 412 (1992), *cert. denied*, 507 U.S. 925 (1993)).

In *Baldridge*, 857 S.W.2d at 252, the trial court advised the defendant that she could not consult with counsel during an overnight recess. The Missouri Court of Appeals held that, although a defendant need not show prejudice if there is a deprivation of the right to

15

counsel, the defendant must show that she actually was deprived of her right to counsel. *Id.* Baldridge failed to make this showing where there was no objection to the instruction or any other evidence that she would have met with counsel absent the ruling. *Id.*

Other courts have similarly concluded. *See e.g. Bailey v. Redman*, 657 F.2d 21, 23–24 (3d Cir. 1981) (Although an instruction to the defendant not to discuss testimony with anyone during overnight recess was improper, absent a showing that the defendant wanted to meet with counsel, there was no violation of the defendant's Sixth Amendment right to counsel.), *cert. denied*, 454 U.S. 1153 (1982); *Commonwealth v. Glashauser*, 8 Pa. D. & C.4th 325 (Pa. Com. Pl. 1990) (Prejudice was not presumed from an instruction not to discuss testimony with anyone during an overnight recess because if "such instruction is not objected to, nor is there any indication that counsel wanted to speak to the defendant, there can be no impermissible infringement on the right to counsel.").[5]

To be sure, the reasoning of these cases is not universal. Appellee and the dissent have cited one case that has dealt with a *Geders*-type violation. *See Martin v. United*

---

[5] As the dissent notes, *Bailey v. Redman*, 657 F.2d 21 (3d Cir. 1981), *cert. denied*, 454 U.S. 1153 (1982), was decided before *Perry v. Leeke*, 488 U.S. 272 (1989), in which the Supreme Court held that the requirement to prove *Strickland* prejudice does not apply where there was an actual deprivation of the right to counsel. The Supreme Court of Delaware, however, subsequently addressed an argument by Bailey that he should be able to file a post-conviction proceeding after the three-year deadline because it was filed within three years of *Perry*, which Bailey asserted announced a new retroactive rule. *Bailey v. State*, 588 A.2d 1121, 1126 (Del. 1991). The court stated that "*Perry* did not hold that *Geders* applied regardless of whether the defendant made some showing that he was actually prevented from communicating with his lawyer during a long recess." *Id.* at 1129. It concluded that *Perry* did not change the analysis in the 1981 decision that a defendant needed to show that he or she wanted to meet with counsel but was prevented from doing so by the court's instruction. *Id.*

16

*States*, 991 A.2d 791 (D.C. 2010). In *Martin*, the District of Columbia Court of Appeals rejected the government's argument that, to obtain a new trial, a defendant who has been told not to confer with counsel must show that "he wanted to meet with counsel but was prevented from doing so by the court's instruction." *Id.* at 795. We find, however, the reasoning of the other cases cited above to be more persuasive.

We hold that, although an order to the defendant not to discuss his or her testimony with anyone during an overnight recess is improper, it does not, by itself, constitute a deprivation of the right to counsel. Rather, to show that the instruction resulted in a violation of the defendant's Sixth Amendment right to counsel, there must be some evidence that there was an actual deprivation of counsel. This evidence may be in the form of an objection to the court's instruction or some other evidence showing that the defendant wanted to speak with counsel and would have done so absent the instruction.[6] In the absence of a showing of an actual deprivation of the Sixth Amendment right to counsel, the defendant is not entitled to a presumption of prejudice.

Here, the circuit court's finding of prejudice was as follows:

Petitioner was prejudiced by trial counsel's failure to object not only because he was deprived of his Sixth Amendment right to counsel during the overnight recess, but also because he was not able to raise the issue on appeal due to trial counsel's failure to object to the erroneous instruction.

---

[6] The dissent characterizes our holding to be that the Sixth Amendment does not entitle appellee to confer with counsel, but it only entitled him to confer with counsel if he asked to do so. That is not our holding. We are saying that, for a convicted defendant to be entitled to a new trial, particularly in the context of a post-conviction petition, the defendant must show that he or she was actually deprived of the right to counsel, i.e., that the defendant wanted to talk with counsel, or that counsel wanted to talk with the defendant, and they would have done so absent the instruction.

17

With respect to the first finding, that appellee was prejudiced by trial counsel's failure to object to the instruction "because he was deprived of his Sixth Amendment right to counsel during the overnight recess," the court appeared to presume prejudice based on its finding of an actual deprivation of counsel. As we have explained, however, there was no showing of an actual deprivation of appellee's right to counsel, given that there was no objection to the instruction and there was no other evidence showing that appellee would have talked with counsel absent the instruction. Accordingly, appellee was not entitled to a presumption of prejudice.

In the absence of a presumption of prejudice, it was appellee's burden to prove prejudice, i.e., to "articulate how specific errors of counsel undermined the reliability of the finding of guilt." *Ramirez*, 464 Md. at 564 (quoting *Walker v. State*, 391 Md. 233, 247 (2006)). Appellee makes no argument that, but for the lack of overnight consultation, the result of the trial would have been different.

The only argument appellee makes on appeal regarding prejudice relates to the court's statement that he was prejudiced by counsel's failure to object to the instruction because the failure to object precluded him from raising the issue on appeal. As the State notes, this argument fails under the analysis set forth in *Newton v. State*, 455 Md. 341 (2017).

In *Newton*, 455 Md. at 348–49, the trial court sent the alternate juror into deliberation with the other jurors, instructing her and other members of the jury that she should not participate in their discussions, but only listen to deliberations in the event that

18

a juror was excused. Defense counsel consented to this procedure. *Id.* at 348. After his convictions were affirmed on appeal, Newton filed a petition for postconviction relief, arguing that counsel's failure to object to the alternate's presence during deliberations constituted ineffective assistance of counsel under the Sixth Amendment. *Id.* at 349–50. He argued that "he was prejudiced because, had his trial counsel objected to the presence of the alternate, he would have been granted a new trial on appeal." *Id.* at 353. The Court of Appeals rejected this argument, explaining:

> This argument assumes, however, that the trial court would have permitted the juror to sit in on deliberations over counsel's objection. When we examine prejudice for an ineffective-assistance-of-counsel claim, we "presume . . . that the judge . . . acted according to law." *Strickland*, 466 U.S. at 694. We therefore must assume that if Newton's attorney had objected, the judge would have sustained Newton's objection and excused the alternate as required by Maryland Rule 4-312(g)(3).

*Id.* at 361. Following this analysis, we presume that, had trial counsel objected on the basis of *Geders*, the trial court would have changed its instruction and allowed appellee the opportunity to speak with his attorney during the overnight recess.

Appellee failed to show prejudice due to counsel's failure to object to the court's no-communication instruction, and therefore, he failed to prove his claim of ineffective assistance of counsel. The circuit court erred in granting him a new trial in this regard.

We address briefly one other issue. As indicated, the circuit court found that trial counsel's motion for a new trial was both "untimely and inadequate," and it stated: "If not for this [c]ourt's decision [on the *Geders* issue], it would recommend that [appellee] be permitted to make a belated Motion for a New Trial." The State indicated in its brief that

it is not challenging this ruling. The court's ruling in this regard, however, was a recommendation, not an order. Accordingly, now that we have reversed the court's order on the *Geders* issue, we remand for further proceedings to allow the court to issue an order regarding the motion for a new trial.[7]

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

[7] In doing so, we note that, with respect to belated appeals, the law is established that "a defendant in a criminal case denied his right to a desired appeal through no fault of his own, and who has been diligent in attempting to assert his appeal rights, is entitled to a belated appeal, without the necessity of presenting any other evidence of prejudice." *Garrison v. State*, 350 Md. 128, 139 (1998). A similar analysis applies to the failure to file a motion for modification of a sentence upon request. *See Mathews v. State*, 161 Md. App. 248, 252 (2008). *Cf. Butler v. State*, —— Md. App. ——, ——, No. 1343, Sept. Term, 2021, slip op. at 9–10 (filed June 30, 2022) (Denial of post-conviction relief was proper where motion for modification of sentence was not timely filed, but the motion nevertheless was denied on its merits.). The court can assess on remand whether the remedy of allowing the filing of a belated motion for a new trial is appropriate pursuant to the analysis set forth in these cases.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1614

September Term, 2021

_____

STATE OF MARYLAND

v.

DAMIEN GARY CLARK

_____

Graeff,
Nazarian,
Sharer, J. Frederick
     (Senior Judge, Specially Assigned),

JJ.
_____

Dissenting Opinion by Nazarian, J.
_____

Filed: July 28, 2022

At the end of the fourth day of Damien Gary Clark's trial, the court ordered him *sua sponte* not to speak with his counsel during the evening recess. The State and the majority all agree that Mr. Clark had a Sixth Amendment right to confer with his counsel during trial and that the court's unprompted directive was wrong. And all seem to agree as well that had Mr. Clark's counsel objected at the time, he would be entitled to a new trial under *Geders v. United States*, 425 U.S. 80 (1976), because the court's directive deprived him of his Sixth Amendment right to counsel.

This case is *Geders* with exactly one difference: Mr. Clark's counsel failed to object to the court's direction. In most instances, that difference would matter, but not here, where the right at issue is the right to counsel. Under *Geders* and the cases that follow it, Mr. Clark's Sixth Amendment rights were violated, in real life terms and in constitutional terms, when the court wrongly forbade him from conferring with counsel. The deprivation happened when the court ordered it, and certainly no later than the following morning, when the overnight recess ended. This is because the right to counsel was Mr. Clark's, not his counsel's to waive or neglect away. And although, as I explain, Mr. Clark shouldn't have been required to prove prejudice, the post-conviction court applied the full *Strickland v. Washington* analysis and found, on this record, both that trial counsel had performed deficiently by failing to object and that Mr. Clark had been prejudiced by counsel's failure to object and the inability to confer with his counsel overnight had he wanted to.

Nevertheless, the majority now holds that Mr. Clark must resurrect his own constitutional right. Although the deprivation that occurred here is identical to the deprivation in *Geders*, the majority requires *him* to prove retroactively that he actually had

planned to exercise the Sixth Amendment right the trial court forbade him from exercising—otherwise no harm, despite the foul. He is worse off in constitutional and real-life terms for his counsel's indisputably deficient performance (the majority doesn't challenge that finding), no small irony in a right to counsel case. I dissent, respectfully, and would affirm the judgment of the postconviction court.

**I.**

The majority recounts the procedural history faithfully, but Mr. Clark's direct appeal and post-conviction proceedings merit a little more detail.

*First*, on direct appeal, Mr. Clark argued, among other things, "that the trial court erred in instructing him, while he was on the stand during direct examination, that he could not speak with his attorney during the overnight recess." *Clark v. State*, No. 486, Sept. Term 2019, slip op. at 11–12, 2020 WL 3498463 at \*7 (Md. App. June 29, 2020). He asserted "that the trial judge's order to him that he not consult his counsel overnight 'denied [him] of his Sixth Amendment right to counsel at a crucial time in the proceedings, namely, during [his] testimony and cross-examination, and after a critical day of testimony that included the testimony of eight state witnesses and the admission of forty pieces of evidence.'" *Id.*, slip op. at 13, 2020 WL 3498463 at \*7. The State countered that Mr. Clark had failed to preserve the issue for appeal because he "'not only failed to object when the court imposed the restriction, he acquiesced to the court's instruction.'" *Id.*

We held that although "Mr. Clark's argument ha[d] merit, we [were] constrained to agree with the State that this argument [was] not preserved." *Id.* We agreed with Mr. Clark that the facts of his case were almost indistinguishable from the circumstances in *Geders*

2

*v. United States*, 425 U.S. 80, (1976) where the Supreme Court ruled "that an order preventing [Mr. Geders] from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Id.* at 91. We found "one critical caveat[,]" however, a "dispositive procedural difference between the two cases: defense counsel in *Geders* objected to the instruction, [] and defense counsel here didn't." *Clark*, slip op. at 13–14, 2020 WL 3498463 at *7–*8.

In our opinion, we noted that "unpreserved trial errors are best addressed through an ineffective assistance of counsel claim at post-conviction." *Id.*, slip op. at 14, 2020 WL 3498463 at *8. We "confess[ed] that we [couldn't] think of any reason why counsel would opt not to object to the trial judge's instruction that Mr. Clark not consult with his attorney overnight[,]" but we couldn't "eliminate the possibility, however slim, that counsel had a legitimate strategic or tactical reason for letting the instruction go . . . ." *Id.* We concluded that there was "no record on which we [could] evaluate the question[,]" and observed that "Mr. Clark [would] have the opportunity to develop that record on post-conviction." *Id.* We rejected Mr. Clark's remaining contentions and affirmed his convictions.

*Second*, in granting Mr. Clark's request for post-conviction relief, the postconviction court found the trial court's no-communication directive inconsistent with the *Geders* rule. After recounting trial counsel's testimony during the hearing, the post-conviction court found that "[n]one of trial counsel's testimony indicated that there was a 'legitimate strategic or tactical reason for letting the instruction go.'" Instead, "[t]rial counsel simply felt that there was no need to communicate that evening." And the court

3

found this problematic because the fundamental right to assistance of counsel belonged to Mr. Clark, not to trial counsel:

> The Sixth Amendment right to counsel belongs solely to the individual on trial and cannot be waived by his attorney. In the *Geders* case, as here, the trial court ordered the defendant not to consult with his attorney during an overnight recess that occurred between the defendant's direct and cross examination. The Supreme Court held that "[a]n order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct and cross examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Geders*, 245 U.S. at 91.

Based on its interpretation of *Geders*, the post-conviction court concluded that "[a]lthough trial counsel may not have been aware of any need to consult with [Mr. Clark] overnight, [Mr. Clark] may have desired to do so, but was not able to due to the trial court's instruction." As such, the court found, trial counsel rendered deficient performance.

The post-conviction court found as well that trial counsel's failure to object to the court's no-communication directive prejudiced Mr. Clark "not only because he was deprived of his Sixth Amendment right to counsel during the overnight recess, but also because he was not able to raise the issue on appeal due to trial counsel's failure to object to the erroneous instruction." The post-conviction court held that Mr. Clark was entitled to a new trial on these grounds, but denied relief for his remaining allegations of ineffective assistance of counsel.[1]

---

[1] The court also sustained Mr. Clark's allegation that "[t]rial counsel's motion for a new trial was untimely and inadequate." The court found this to be deficient performance and noted "[i]f not for this Court's decision" regarding the court's no-communication

4

**II.**

I start from the core principle that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective counsel at all critical stages of a criminal case. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). But whether defense counsel was ineffective is a different question than whether a defendant was denied counsel altogether. "There is a distinction between the actual or constructive denial of the assistance of counsel altogether, and whether the quality of the lawyer's performance itself has been constitutionally ineffective." *Wooten-Bey v. State*, 318 Md. 301, 307 (1990) (cleaned up).

In *Strickland*, the Supreme Court enumerated "the standard for determining whether counsel's legal assistance to his client was so inadequate that it effectively deprived the client of the protections guaranteed by the Sixth Amendment." *Perry v. Leeke*, 488 U.S. 272, 279 (1989). Under *Strickland*, "a defendant who claims that he has received ineffective assistance must show *first* that counsel's performance was deficient, and *second* that the defective performance prejudiced the defense." *Rich v. State*, 230 Md. App. 537, 553 (2016) (emphasis in original) (*citing Strickland*, 466 U.S at 687).

The State's appeal in this case hinges on the view that the post-conviction court misapplied the *Geders* rule to a *Strickland* claim. The State asserts that "[t]he claim of error that was before the postconviction court was not a claim of *Geders* error. Rather, it was a

directive, "it would recommend that [Mr. Clark] be permitted to make a belated Motion for a New Trial." Although I wouldn't need to reach this, I agree, in the context of its holdings, with the majority's decision to remand for further proceedings on this question.

5

*Strickland* claim that trial counsel had rendered ineffective assistance by failing to preserve or prevent a *Geders* error." Put another way, the State faults the post-conviction court for assessing Mr. Clark's ineffective assistance of counsel claims under *Geders*, rather than *Strickland*, because "*Geders* was not an ineffective-assistance case; rather, *Geders* was a case of trial-court error reviewed on direct appeal." But the post-conviction court *did* assess Mr. Clark's claim under *Strickland*, albeit without directly citing to the case. And in any event, Mr. Clark prevails under either standard.

### A. *Geders* And *Strickland*.

So that I don't "'inappropriately scrambl[e] the eggs of'" the *Geders* rule and the *Strickland* standard, I begin with an overview of the relationship between no-communication directives and ineffective assistance of counsel claims. *Ramirez v. State*, 464 Md. 532, 565 (2019) (*quoting Redman v. State*, 363 Md. 298, 303 n.5 (2001)).

As we acknowledged in Mr. Clark's direct appeal, there is no principled distinction between *Geders* and the facts of this case except that trial counsel in *Geders* objected to the court's no-communication directive where Mr. Clark's trial counsel didn't. Mr. Geders was charged with conspiracy to import a controlled dangerous substance and possession of marijuana. *Geders*, 425 U.S. at 81. He, like Mr. Clark, testified in his own defense. *Id.* at 82. At the conclusion of his direct testimony, "the court recessed for the night" and "the prosecutor asked the judge to instruct [Mr. Geders] not to discuss the case overnight with anyone." *Id.* Defense counsel objected, arguing that "he had a right to confer with his client about matters other than the imminent cross-examination," but the trial court overruled defense counsel's objection and granted the prosecution's request. *Id.* Mr. Geders was

6

convicted and sentenced to prison. *Id.* at 85.

The Supreme Court reversed his conviction, holding "that an order preventing [Mr. Geders] from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Id.* at 91. The Court reasoned that "[i]t is common practice during such recesses for an accused and counsel to discuss the events of the day's trial":

> Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

*Id.* at 88.

The Court acknowledged a trial court's "broad power to sequester witnesses before, during, and after their testimony[,]" *id.* at 87 (citations omitted), but noted that "[a] sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial." *Id.* at 88. Because there were "other ways to deal with the problem of possible improper influence on testimony or 'coaching' of a witness short of putting a barrier between client and counsel for so long a period as 17 hours[,]" *id.* at 89, the Court concluded that "[t]o the extent that conflict remains between the defendant's right to consult with his attorney during a long

7

overnight recess . . . and the prosecutor's desire to cross-examine the defendant without intervention of counsel," "the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Id.* at 91 (citation omitted). The Court reversed Mr. Geders's conviction without considering whether the trial court's ruling prejudiced him.

Eight years after *Geders*, the Supreme Court decided *Strickland*. In addition to establishing the two-prong test required to demonstrate ineffective assistance of counsel, the Court also discussed the limited "Sixth Amendment contexts" where "prejudice is presumed." *Strickland*, 466 U.S. at 692. One such context that *Strickland* identified is cases where there is "[a]ctual or constructive denial of the assistance of counsel altogether . . . ." *Id.* at 692. The Court reasoned that "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.* (citation omitted). In other words, the actual or constructive denial of counsel is "quite different from a case in which it is claimed that counsel's performance was ineffective." *Penson v. Ohio*, 488 U.S. 75, 88 (1988). And in those cases, there is no need to analyze the second prong of *Strickland*.

The same day that the Supreme Court issued its opinion in *Strickland*, it also decided *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Court explained further the narrow exceptions to *Strickland*'s general rule requiring proof of prejudice. The Court "recogniz[ed] that the right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id.* at 658. Usually, the Court said, "the burden rests on the accused to demonstrate a constitutional violation[,]" but it noted that there were also "circumstances that are so likely

8

to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* The most obvious circumstance, the Court reasoned, was a complete denial of counsel:

> The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that make the adversary process itself presumptively unreliable.

*Id.* at 659.

In *Perry*, decided five years after *Strickland* and *Cronic*, the Supreme Court had the opportunity to consider whether a trial court's no-communication directive is subject to *Strickland*'s prejudice analysis. 488 U.S. at 272–73. Mr. Perry was charged with murder, kidnapping, and sexual assault. *Id.* at 274. He chose to take the stand and testify. *Id.* At the end of his direct testimony, the trial court announced "a 15-minute recess, and, without advance notice to counsel, ordered that [Mr. Perry] not be allowed to talk to anyone, including his lawyer, during the break." *Id.* After the recess, defense counsel moved for a mistrial. *Id.* The court denied the motion, noting that Mr. Perry "was not entitled to be cured or assisted or helped approaching his cross-examination." *Id.* (cleaned up).

After exhausting his state appeals, Mr. Perry sought a writ of *habeas corpus* in the United States District Court for the District of South Carolina. The district court granted Mr. Perry relief, citing *United States v. Allen*, 542 F.2d 630 (4th Cir. 1976), and *Stubbs v. Bordenkircher*, 689 F.2d 1205 (4th Cir. 1982), "which held that it is always reversible error for a trial court to prevent a defendant and his counsel from conferring during a recess, no

matter how brief." *Perry v. Leeke*, 832 F.2d 837, 839 (4th Cir. 1987). The United States Court of Appeals for the Fourth Circuit "granted *en banc* review to determine whether" the automatic reversal rule enumerated in *Allen* and *Stubbs* "continue[d] to govern in light of the Supreme Court decisions in" *Strickland* and *Cronic*. *Id.*

Based on its interpretation of *Strickland* and *Cronic*, the Fourth Circuit held that a no-communication directive "mandates reversal only if that error was prejudicial." *Id.* The majority summarized the holdings from *Allen* and *Stubbs*:

> In *Allen*, a panel of this circuit addressed the issue left open by the majority opinion in *Geders* and adopted the position of Justice Marshall's concurrence. The panel stated that "a restriction on a defendant's right to consult with his attorney during a brief routine recess is constitutionally impermissible" and that reversal would be necessary whether or not the restriction was prejudicial. 542 F.2d at 634.
>
> Later, in *Stubbs*, we qualified *Allen* slightly to require the petitioner "to show that he desired to consult with his attorney, and would have consulted with him but for the restriction placed upon him by the trial judge." 689 F.2d at 1207.

*Id.* at 840. The court noted that but for *Strickland* and *Cronic*, the automatic reversal rule of *Allen* and *Stubbs* would be controlling in Mr. Perry's case. However, the court found that the automatic reversal rule "cannot be squared with the analysis of *Strickland* and *Cronic*, and must be replaced with an inquiry into prejudice." *Id.* at 840–41.

The Fourth Circuit reasoned that "*Strickland* and *Geders* do not imply . . . that Sixth Amendment claims can be mechanically divided into a typology requiring automatic reversal when there is a 'denial of counsel' and a prejudice analysis where there is 'ineffective assistance'":

> The determinative factor in analyzing a Sixth Amendment claim is not the label to be attached to the alleged deprivation. The Supreme Court has recognized as much by alternately describing *Geders* as a case involving the denial of counsel, and as a case involving ineffective assistance. Instead, the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.
>
> *Strickland* and *Cronic* held that because the purpose of the Sixth Amendment is simply to ensure that criminal defendants receive a fair trial, the analysis of claims alleging violations of the right to counsel always focuses on prejudice. Automatic reversal is warranted only where prejudice can be presumed.

*Id.* (cleaned up). The Fourth Circuit reversed the district court's order granting Mr. Perry relief, based on its conclusion that Mr. Perry did not suffer prejudice because of the trial court's no-communication directive. *Id.* at 843.

The Supreme Court ultimately affirmed the Fourth Circuit but declined to "accept the rationale" of that decision. *Perry*, 488 U.S. at 280. The Court held that the *Geders* rule concerning a no-communication directive "is not subject to the kind of prejudice analysis" announced in *Strickland*, *id.*, and reasoned "that a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*." *Id.* at 278–79. The Court stated that its "citation of *Geders*" in *Strickland* "was intended to make clear that actual or constructive denial of the assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." *Id.* at 280 (cleaned up). Preventing a defendant from communicating with trial counsel during an overnight recess, the Court concluded, constituted actual or constructive denial of the assistance of counsel.

The Court also "consider[ed] whether the *Geders* rule applies to a similar order

11

entered at the beginning of a 15-minute afternoon recess." *Id.* at 274. The Court held that it didn't, and distinguished the recess in *Geders* from the recess in *Perry*:

> The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlled in the context of a long recess . . . . The fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise that basic right. But in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice.

*Id.* at 284.

The majority distinguishes this line of cases by disputing that the court's instruction in this case deprived Mr. Clark of his right to counsel. Slip op. at 10–12. But the right is the right, and it strains common sense to conclude that a right to counsel, which inheres in the defendant himself, can be waived by ineffective counsel and must be resurrected, with *Strickland*-level proof of prejudice, by the ineffective counsel's client.

### B. The Trial Court Deprived Mr. Clark Of Counsel During The Overnight Recess, In Violation Of *Geders*.

As a factual matter, there is no dispute that the trial court instructed Mr. Clark that he was not to confer with his counsel overnight, nor that he heeded this instruction and, in fact, did not confer with his counsel during the overnight recess. In reality, Mr. Clark was precluded by the court from conferring with his counsel, and he never did confer with his

12

counsel. The State argues *first*, though, that he wasn't actually deprived of the opportunity to confer with his counsel—indeed, the State says that "there was no factual basis on which the postconviction court could conclude that [Mr.] Clark and his counsel would have consulted during the overnight recess but for the trial court's directive[,]" and that the post-conviction court erred in concluding that Mr. Clark "was actually deprived of consultation with counsel in violation of *Geders*." How is this possible? The State concedes that under the *Geders* rule, "[t]he trial court's directive was improper," and the majority agrees. Nonetheless, the State asserts "that a Sixth Amendment deprivation of the type recognized in *Geders* . . . does not occur unless a court's no-communication directive actually prevents the defendant and defense counsel from communicating[,]" which in turn requires Mr. Clark to prove that he actually had wanted to confer with counsel. In other words, it is not enough on this posture that the trial court ordered him not to communicate with his lawyer—the State contends that he also must prove retroactively his then-contemporaneous intent to do so.

The State acknowledges "*Perry's* teaching that no showing of actual prejudice is necessary to establish a Sixth Amendment violation under *Geders*," but argues that "multiple courts have recognized . . . that a *Geders* error is not established simply by a trial court's unobjected-to directive not to communicate with counsel during a lengthy recess, without more."[2] Instead, "a defendant asserting a *Geders* claim still must establish that the

---

[2] The State asserts that Mr. Clark "mischaracterizes the State as arguing that a *Geders* error requires a showing of prejudice." "To the contrary," the State argues, "the actual-deprivation rule is not a requirement for the defendant to show prejudice resulting

defendant was in fact deprived of consultation with counsel that the defendant in fact desired." The State asserts that Mr. Clark "fail[ed] to provide authority to rebut the proposition that an actual deprivation of communication with trial counsel is a necessary component of a *Geders* claim."

Until today, no Maryland court had recognized such a presumption, and the majority errs in doing so here. Whether or not Mr. Clark desired to communicate with trial counsel doesn't matter for purposes of establishing a *Geders* violation. The federal appellate court decisions and state appellate court decisions on which the majority relies—including *Bailey v. Redman*, 657 F.2d 21 (3d Cir. 1981), *United States v. Nelson*, 884 F.3d 1103 (11th Cir. 2018), and *Wallace v. State*, 851 So. 2d 216 (Fla. Dist. Ct. App. 2003)—are all distinguishable and, in my view, inconsistent with the reality that Mr. Clark *was* deprived of his opportunity to consult with counsel when the trial court instructed him not to consult with counsel overnight.

The United States Court of Appeals for the Third Circuit decided *Bailey* in 1981, before the Supreme Court's decisions in *Strickland*, *Cronic*, and *Perry*. During Mr. Bailey's trial for first-degree murder and related charges, the trial court instructed him "not to discuss your testimony with anybody" during the overnight recess. *Bailey*, 657 F.2d at 22. Defense counsel did not object to the trial court's no-communication directive. *Id.* at 23. Mr. Bailey didn't raise this issue until he sought post-conviction relief, arguing that

---

from a deprivation of the right to counsel; rather, it is a requirement for the defendant to show that there was a deprivation of counsel in the first place." But as I discuss below, Mr. Clark was not required to show prejudice or actual deprivation.

14

under *Geders*, "the trial court's instruction constituted a per se 'deprivation' of his sixth amendment right to counsel." *Id.* The Third Circuit disagreed:

> While we acknowledge that the Supreme Court held in *Geders* that a defendant may not be prohibited from consulting with his attorney during an overnight recess . . . our holding in the instant case is not inconsistent with [that] decision[]. In [] *Geders* . . . there was an indication that absent the court's instruction, the defendant would have met with his counsel. In the instant case [Mr. Bailey] made no such showing. He did not question or object to the court's instruction nor has he presented evidence to corroborate his assertion that he failed to do so because of the chilling effect of the court's admonition.

*Id.* at 23–24 (cleaned up). Therefore, the court declined to find that Mr. Bailey was "deprived of a right that he sought to exercise." *Id.* at 24.

On its face, then, *Bailey* is consistent with the State's argument that Mr. Clark was required to demonstrate that he actually wanted to meet with counsel for a completed *Geders* violation to occur and that he failed to do so. And in *Stubbs*, the Fourth Circuit based its holding (that a defendant must show an actual deprivation of counsel by demonstrating that they wanted to meet with trial counsel but were prevented from doing so) on its interpretation that Mr. "Stubbs was in precisely the same position as the petitioner in *Bailey* . . . ." 689 F.2d at 1207. And then in *Perry*, where the trial court instructed the defendant not to communicate with counsel during a fifteen-minute recess, the Fourth Circuit cited *Stubbs* to hold that under *Strickland* and *Cronic*, "the per se reversal rule . . . must be replaced with an inquiry into prejudice." 832 F.2d at 841.

But again, when *Perry* went to the Supreme Court, the Court *rejected* the Fourth Circuit's rationale and made a point of clarifying that it only cited *Geders* in *Strickland* "to

15

make clear that actual or constructive denial of the assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." 488 U.S. at 280. Indeed, the Court held in *Perry* "that a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*." *Id.* at 278–79.[3]

And the rule announced in *Geders*—"that an order preventing [Mr. Geders] from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment"—makes no mention of any requirement that a defendant prove an actual real-time desire to meet with counsel during the overnight recess as a condition of proving that they were deprived of the assistance of counsel. 425 U.S. at 91. To establish a completed *Geders* violation, then, Mr. Clark was required only to demonstrate that the trial court issued a blanket no-communication directive for the overnight recess. He met that burden.

Where *Bailey* is distinguishable legally, *Nelson* is distinguishable factually. Mr.

---

[3] The majority then quotes *dicta* from Mr. Bailey's later attempt to obtain post-*Perry* post-conviction relief (the claim was held to be barred procedurally) for the proposition that "*Perry* did not change the analysis in the 1981 decision that a defendant needed to show that he or she wanted to meet with counsel but was prevented from doing so by the court's instruction." Slip op. at 16 n.5 (*citing Bailey v. State*, 588 A.2d 1121, 1129 (Del. 1991)). The Delaware Supreme Court's analysis of Mr. Bailey's claim followed its recognition, citing *Perry*, that prejudice analysis is inappropriate where the defendant proves that the trial court totally deprived him of his Sixth Amendment rights, but leaps from that to the conclusion, without analysis or citation, that "*Perry* did not hold that *Geders* applied regardless of whether the defendant made some showing that he was actually prevented from communicating with his lawyer during a long recess." *Id*. I take the Supreme Court at its word on this question.

16

Nelson and his co-defendant, Mr. Skillern, were convicted of mail fraud, wire fraud, and conspiracy. *Nelson*, 884 F.3d at 1104. On appeal, Mr. Skillern argued that he was deprived of his Sixth Amendment right to the assistance of counsel because "just before an overnight recess that occurred while [Mr.] Skillern was on the stand, the court granted his lawyer's request to speak to him 'about matters other than his testimony.'" *Id.* The United States Court of Appeals for the Eleventh Circuit held that under "the circumstances of this case," the trial court did not commit an unconstitutional error in granting the defense attorney's request. *Id.* In its analysis, the Eleventh Circuit considered where Mr. Skillern's case fell "along the spectrum marked out" by *Geders* and *Perry*:

> The limitation on lawyer-client communication here was 'worse,' so to speak, than in *Perry*, in which the Supreme Court found no Sixth Amendment violation, in that its duration was longer: there, the recess lasted only minutes; here, it spanned an entire night. In two respects, though, the limitation in this case was not as bad as in *Geders* . . . which found violations: the limitation here was more narrowly circumscribed than in *Geders*, in that [Mr.] Skillern was permitted to talk to his lawyer about issues other than his testimony . . . . So we're somewhere in the middle: Does it violate the Sixth Amendment to prevent a criminal defendant from discussing his testimony, but not other topics, during a single overnight recess? Although no existing precedent resolves that precise question, even the Government seems to concede that the answer, at least as a general matter, is probably yes.

*Id.* at 1106. But the court noted that there was a "wrinkle," that "it was [Mr.] Skillern's attorney who actually proposed the limitation that [he] now challenges." *Id.*

It's true that the court held that "because the trial record doesn't indicate that either [Mr.] Skillern or his lawyer had any intention or desire to discuss his testimony during the recess, [Mr.] Skillern can't show that he was actually deprived of his right to counsel . . . ."

17

*Id.* at 1107. But what distinguishes *Nelson* from Mr. Clark's case is that the trial court's directive gave Mr. Skillern exactly what his counsel asked for:

> The issue here isn't just that [Mr.] Skillern's lawyer failed to object to the district court's limitation. Instead, the problem is that the record is entirely devoid of *any* indication—in *any* form—that [Mr.] Skillern or his attorney planned or wanted to confer about his testimony during the recess. To the contrary, [Mr.] Skillern got from the district court exactly what his lawyer asked for—namely, permission to speak "about matters other than his testimony." We therefore . . . hold . . . that [Mr.] Skillern hasn't shown that he was actually deprived of his Sixth Amendment right to counsel.

*Id.* at 1109–10 (emphasis in original).

In this case, the trial court issued, *sua sponte* even, a blanket no-communication directive that precluded Mr. Clark not only from discussing his testimony during the overnight recess, but also from discussing any other important matters that may have concerned Mr. Clark during trial, matters the Supreme Court has found important:

> The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlled in the context of a long recess. . . . The fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise that basic right. But in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice.

*Perry*, 488 U.S. at 284.

18

The majority also finds persuasive the District Court of Appeal of Florida's decision in *Wallace*.[4] Mr. Wallace was on the witness stand during his trial for first-degree murder when the court decided to recess for lunch and informed Mr. Wallace that he could not confer with defense counsel during the lunch recess. *Wallace*, 851 So. 2d at 217. On appeal from denial of post-conviction relief, Mr. Wallace argued that the trial court's no-communication directive "amounted to a deprivation of his sixth amendment right to counsel . . . ." *Id.* The Florida Court of Appeal disagreed, noting that "neither the record of the trial nor any other showing made by [Mr. Wallace] establishes or even intimates that either counsel or [Mr. Wallace] had any desire to consult during the critical time . . . ." *Id.*

But again, as in *Perry*, there's a difference between an overnight recess no-communication directive and a shorter duration no-communication directive. The duration of the trial court's directive in this case was, as in *Geders*, one "of constitutional dimension." *Perry*, 488 U.S. at 280. In *Perry*, the Supreme Court clarified that an overnight recess no-communication directive "was of a different character" than a fifteen-minute recess no-communication directive. *Id.* at 284. An overnight recess no-communication directive constitutes an "actual or constructive denial of the assistance of counsel altogether." *Id.* at 280. Because barring communication between attorney and client during an overnight recess is a deprivation of constitutional dimension, I would hold that the trial

---

[4] In its brief, the State only mentions *Wallace* in a footnote and didn't spend any time analyzing it or comparing it to the specific facts of Mr. Clark's case, and made no mention of *Wallace* in its reply brief. At oral argument, however, the State urged us to find the *Wallace* opinion instructive.

court deprived Mr. Clark of his right to the assistance of counsel, in violation of *Geders*.

I disagree with Mr. Clark that the State "cherry-picked foreign cases," but he's right (and the majority agrees as well) that there are cases from other jurisdictions that weaken the State's argument that we should follow *Bailey*, *Nelson*, and *Wallace* and require Mr. Clark to prove that he actually wanted and planned to consult with counsel as a condition of finding a completed *Geders* violation. For example, in *Martin v. United States*, the District of Columbia Court of Appeals rejected the government's argument "that to show a deprivation of his Sixth Amendment rights, a defendant must . . . demonstrate that he wanted to meet with counsel, but was prevented from doing so by the court's instruction." 991 A.2d 791, 795 (2010) (cleaned up).

Mr. Martin elected to testify in his own defense at his trial for assaulting a police officer. *Id.* at 793. On a Friday afternoon, during the Government's cross-examination of Mr. Martin, the trial court adjourned until Monday and granted the Government's request that he "not speak to anyone pending the examination on Monday" morning. *Id.* Mr. Martin's counsel did not object to the court's no-communication directive. *Id.*

On appeal, the Government argued that because Mr. Martin and his counsel "did not object to the sequestration order or otherwise express a desire to confer, there is no evidence in the record affirmatively showing that [Mr. Martin] 'actually wished to consult counsel' over the weekend recess." *Id.* at 795. Therefore, the Government contended, Mr. Martin couldn't "show that the challenged order actually deprived him of counsel." *Id.* (cleaned up).

The District of Columbia Court of Appeals found that "[i]n an important respect,

the government frames the issue incorrectly":

> The order barring [Mr. Martin] from conferring with his attorney during the weekend recess was erroneous. After *Geders* [and] *Perry* . . . that is beyond dispute. The order denied [Mr. Martin] his Sixth Amendment right. What the government really means to say is that we should presume the constitutional error was innocuous in the absence of evidence affirmatively showing that [Mr. Martin] actually wanted to confer with his attorney (or vice versa). The government concedes that if [Mr. Martin] was deprived of a right to counsel he wanted to exercise, he need not show how that deprivation prejudiced him. But the government argues that no such deprivation is shown on the record before us.

*Id.* The court found the Government's argument "flawed":

> In essence, the government is arguing that [Mr. Martin] waived his Sixth Amendment right to the assistance of counsel by his failure to assert it—in other words, by his silence—when the trial judge erroneously undertook to curtail his exercise of the right. But "a valid waiver [of Sixth Amendment rights] cannot be presumed from a silent record." For a waiver of the right to counsel to be valid, it must be "an intentional relinquishment or abandonment of a known right or privilege." As the Supreme Court has emphasized, "the right to counsel does not depend upon a request by the defendant, and . . . courts indulge in every reasonable presumption *against* waiver. Thus, the burden is on the government to establish a valid waiver in this case, not on [Mr. Martin] to disprove it.

> The government has not carried that burden in this case. The basic defect in its position is that the requisite knowledge and intent to support a finding of waiver cannot be inferred from the mere fact that [Mr. Martin] and defense counsel failed to object to the court's sequestration order.

*Id.* at 796 (emphasis in original) (citations omitted). The court held, therefore, that Mr.

Martin was entitled to a new trial, even though there was no evidence that he desired to

communicate with defense counsel over the weekend recess and was actually prevented by

the court's no-communication order from doing so.[5]

The State characterizes Mr. Clark's claim as a "*Geders*-like Sixth Amendment claim[.]" But this isn't a *Geders-like* claim—it's a straight-up *Geders* claim. The deprivation happened. I can find only one reported case in which a Maryland appellate court has directly addressed the *Geders* rule, *Wooten-Bey v. State*, 76 Md. App. 603, 605 (1988), and it's consistent with my analysis here. Mr. Wooten-Bey was convicted of felony murder and related offenses. He testified in his own defense, and before a lunch recess during his direct testimony, the trial court and Mr. Wooten-Bey's defense counsel had the following exchange:

> [DEFENSE COUNSEL]: Your Honor, I think I have about five more minutes, but I'm not sure. May I inquire if we might take a luncheon break, and I can finish within five minutes. I may have even less then [sic] that, if that is agreeable?
>
> [THE COURT]: All right. [Jury Foreman], and ladies and gentlemen, we will indeed break until 1:30 for lunch. . . . Mr. Wooten-Bey, you are a sequestered witness sir, which means you may not now discuss with anything, including [defense counsel] anything about your testimony on the witness stand, because you are sequestered.
>
> [DEFENSE COUNSEL]: I think I do have the right to talk about what I may ask him.
>
> [THE COURT]: Under no circumstances may you talk to a witness under oath on the witness stand. You, or [State's Attorney], or anybody. That witness is sequestered, and under oath, and going through their testimony. As opposed to a sequestered witness outside, you can talk to. But not once the witness is sequestered by the oath, they're not to be approached by anybody.

---

[5] I acknowledge that *Martin* is a direct appeal, and not an appeal from the denial or grant of post-conviction relief. But as I discuss below, that distinction does not affect or alter my analysis.

22

*Id.* at 607–08. But the trial court "then qualified this statement, telling defense counsel that [it] was *not* forbidding all consultation between [Mr. Wooten-Bey] and his attorney during lunch, only consultation concerning [Mr. Wooten-Bey's] 'prospective testimony.'" *Id.* at 608 (emphasis in original). And after the State's cross-examination of Mr. Wooten-Bey, the trial court allowed Mr. Wooten-Bey and his attorney to confer about Mr. Wooten-Bey's desire to "resume the stand . . . ." *Id.*

On appeal, we agreed with Mr. Wooten-Bey "that the trial judge erred in imposing *any* restriction on [Mr. Wooten-Bey's] right to consult with his attorney during the luncheon recess." *Id.* at 609 (emphasis in original). We declined, though, "to impose a per se rule of reversal where the denial of access was brief, limited in scope, and where the trial judge gave counsel and [Mr. Wooten-Bey] time to confer when it became apparent they needed to do so, thus curing any constitutional defect." *Id.*

We found our holding consistent with *Perry*, noting "[t]he *Perry* Court found that it made little sense to distinguish between situations involving ineffective assistance of counsel and those involving a *brief* denial of counsel . . . ." *Id.* at 612 (emphasis added). Like the Supreme Court in *Perry*, we found from the record that it was "clear" that Mr. Wooten-Bey "had an opportunity to and did confer with his counsel during other court recesses." *Id.* at 614. We also found our holding consistent with *Geders* based on the length of the trial court's no-communication directive:

> [Mr. Wooten-Bey] was admittedly deprived of his right to counsel for a longer period of time than was the defendant in *Perry*. In *Geders*, the Court did not require that prejudice be shown primarily because of the length of the deprivation and strategic importance of overnight consultation before the next

23

> day's trial. The hour-long deprivation here does not rise to the level where prejudice to [Mr. Wooten-Bey's] case can be presumed, as it was in *Geders*. Moreover, in the instant case, the trial judge remedied the deprivation by calling a recess for consultation shortly after lunch.

*Id.* at 615 (cleaned up).

We noted that our holding "impose[d] no requirement that a criminal defendant divulge the contents of privileged consultations with his attorney in order to establish prejudice." *Id.* at 616. We held only that "where the deprivation is short enough so that prejudice cannot be presumed and it is apparent that the proceeding was fundamentally fair, a *per se* rule of reversal and retrial will not be applied." *Id.* The Court of Appeals agreed with us, holding that "under the circumstances" of that specific case, there was no Sixth Amendment violation. *Wooten-Bey*, 318 Md. at 302. The Court also recognized the distinction between ineffective assistance of counsel claims and the actual denial of the assistance of counsel altogether. *Id.* at 307.

The denial of access in Mr. Clark's case wasn't brief—it lasted overnight. And it wasn't limited in scope—the trial court imposed a blanket restriction on Mr. Clark's communication with trial counsel. On direct appeal, we even admitted that Mr. Clark's *Geders* claim failed only because he failed to preserve the issue:

> Although we conclude that Mr. Clark's argument has merit, we are constrained to agree with the State that this argument is not preserved.
>
> Mr. Clark argues that the facts of his case are "nearly identical circumstances" to *Geders v. United States*, 425 U.S. 80, 96 (1976), and they are. In *Geders*, the court recessed for the night while the defendant was on the witness stand. *Id.* at 82. The prosecutor asked the trial judge to instruct the defendant not to discuss the case overnight with anyone, including his own

attorney. *Id.* The Supreme Court held that the trial judge's instruction violated the defendant's constitutional right to counsel. *Id.* at 91. We see no principled distinction between the circumstances of *Geders* and this case and, to its credit, the State agreed when asked as much at oral argument, with one critical caveat.

The critical caveat is the dispositive procedural difference between the two cases: defense counsel in *Geders* objected to the instruction, *id.* at 83, and defense counsel here didn't. To preserve an issue for appellate review, a party must object at the time the ruling is made. Md. Rule 4-323(c). If a party is given an opportunity to object but fails to do so, he has waived the objection, *Hill v. State*, 355 Md. 206, 219 (1999), and we generally "will not decide . . . any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." Maryland Rule 8-131. Counsel's decision, for whatever reason, not to object left the trial court with no opportunity to address the error.

*Clark*, slip op. at 13–14, 2020 WL 3498463 at \*7–\*8.

Just as in *Geders*, the no-communication directive violated Mr. Clark's Sixth Amendment right to the assistance of counsel at trial. At the close of his direct examination, the court instructed Mr. Clark, who was on the witness stand, that he couldn't "talk to anybody about the case" during the overnight recess. The trial court acknowledged that "[i]t sounds counter intuitive[,]" but instructed Mr. Clark that he couldn't even talk to his own attorney about the case. In real life and under the binding and most analytically congruent cases—*Geders*, *Perry*, and *Wooten-Bey*—the trial court's no-communication directive prevented Mr. Clark from communicating with his attorney, and the violation was complete when the directive was given and followed.

25

**C. The Post-Conviction Court Found Correctly That Mr. Clark's Trial Counsel Rendered Ineffective Assistance Of Counsel By Failing To Object To The No-Communication Directive.**

The State argues *next* that, when viewed through the *Strickland* lens, the post-conviction court "erred . . . by finding that not objecting to the directive was deficient performance." "And even if trial counsel performed deficiently," the State asserts, the post-conviction court "erred further by effectively presuming prejudice under the structural-error standard that applies to preserved *Geders* errors on direct appeal, rather than considering whether [Mr.] Clark met his burden to demonstrate *Strickland* prejudice." The majority focuses solely on the prejudice prong, but in my view, Mr. Clark satisfied both halves of the *Strickland* analysis, whether he needed to or not.

*1. Trial counsel's failure to object satisfies the deficient performance prong.*

The State contends that the post-conviction court erred in finding that trial counsel's failure to object to the court's no-communication directive constituted deficient performance. Citing trial counsel's testimony at the post-conviction hearing, the State argues that trial counsel had "a reasonable basis not to object" because "there was no topic about which [trial counsel] and [Mr.] Clark needed to communicate." This, in the State's view, was a strategic decision:

> Even if there might arguably have been "no downside" to objecting, it is inherently strategic and tactical to refrain from objecting when there is equally no upside. Where [trial counsel] and [Mr.] Clark had no need to communicate during the overnight recess, it [] was reasonable to preserve defense counsel's resources and the court's time and patience by forgoing a pro forma constitutional demand for an opportunity to communicate which the defense had no intention of actually exercising.

26

Mr. Clark disagrees, arguing that trial counsel's failure to object fell below prevailing professional norms and was not a reasonable trial strategy or tactic.

To satisfy the deficient performance prong, Mr. Clark must demonstrate that his trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In other words, trial counsel's representation must "f[a]ll below an objective standard of reasonableness[,]" measured by "prevailing professional norms." *Id.* at 688. Mr. Clark also must prove that "such action was not pursued as a form of trial strategy." *Coleman*, 434 Md. at 331 (citations omitted). "Judicial scrutiny of counsel's performance must be highly deferential":

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (cleaned up).

On direct appeal, we "confess[ed] that we [couldn't] think of any reason why counsel would opt not to object to the trial judge's instruction that Mr. Clark not consult with his attorney overnight[,]" but also couldn't "eliminate the possibility, however slim,

that counsel had a legitimate strategic or tactical reason for letting the instruction go . . . ." *Clark*, slip op. at 14, 2020 WL 3498463 at *8. The post-conviction court couldn't find one either, and the post-conviction record confirms our conclusion that Mr. Clark's trial counsel had no "legitimate strategic or tactical reason for letting the instruction go . . . ." *Id.*

*Coleman* provides an instructive starting point. Mr. Coleman was charged with first-degree murder and related charges. *Coleman*, 434 Md. at 325. When he was arrested, Mr. Coleman was advised of his *Miranda* rights twice before being interrogated. *Id.* at 326. At several points throughout the interrogation, Mr. Coleman chose to remain silent. *Id.* at 327. At trial, the detective who interrogated Mr. Coleman referenced Mr. Coleman's post-*Miranda* silence "approximately 30 times in total" and commented on Mr. Coleman's "nonverbal behavior during questioning . . . ." *Id.* at 327–28. Defense counsel did not object to the detective's testimony. *Id.* at 328. The jury convicted Mr. Coleman and he was sentenced to life without parole. *Id.*

At a post-conviction hearing, trial counsel for Mr. Coleman testified "that he was unaware that he could object to the references to [Mr.] Coleman's silence under the principles of *Miranda*." *Id.* at 338. On appeal from denial of post-conviction relief, Mr. Coleman argued "that he received ineffective assistance of counsel when his trial counsel failed to object to multiple instances during trial where the State brought into evidence that [Mr.] Coleman had remained silent in the face of police questioning after [he] had been given *Miranda* warnings." *Id.* at 331–32. According to Mr. Coleman, the detective's references to his silence during interrogation violated his Fifth Amendment rights, and by

28

failing to object, defense counsel rendered deficient performance. *Id.* at 332.

The Court of Appeals agreed with Mr. Coleman and could "not see how trial counsel's failure to object because of his ignorance of the law could possibly be seen as sound trial strategy or a strategic choice" because "a reasonably competent attorney in this situation would have raised an objection." *Id.* at 338. Further, the Court reasoned, "even if trial counsel believed that his failure to object was a trial tactic, we conclude . . . that the failure to object . . . fell significantly below the objective standard of reasonableness and that the first prong of *Strickland* was therefore established." *Id.* at 340 (cleaned up). The Court held that trial counsel's failure to object "was deficient because it fell below the range of competence demanded of attorneys in criminal cases and was not pursued in furtherance of sound trial strategy." *Id.*

So too here. During Mr. Clark's post-conviction hearing, post-conviction counsel asked trial counsel whether they were familiar with the *Geders* rule:

> [POST-CONVICTION COUNSEL]: At [the] time [of trial], were you familiar with the United States Supreme Court's holding in *Geders versus the United States*?
>
> [TRIAL COUNSEL]: Not with specificity, no.
>
> [POST-CONVICTION COUNSEL]: Okay. And just to clarify, I'm referring to the case that the opinion came out in 1976. The citation is 425 U.S. 80. So, your testimony again is that you were not familiar with the Court's holding in that case that Mr. Clark had a right to confer with you?
>
> [TRIAL COUNSEL]: He always has a right to confer with me but if you're asking me, did I read that particular case . . . and know it specifically, that case, no. I know he had a right to talk to me and if he said he had anything to say, I would have talked to him.

Similar to Mr. Coleman's trial counsel's ignorance of *Miranda*, Mr. Clark's trial counsel's

ignorance of *Geders* cannot be viewed as "sound trial strategy or a strategic choice." *Coleman*, 434 Md. at 338. Trial counsel's failure to object provided no potential benefit to Mr. Clark. I agree with Mr. Clark that "[a]ny reasonable attorney in [trial counsel's] position would have expected Mr. Clark to have questions and concerns in an overnight recess following their direct examination. Mr. Clark was, after all, going to be cross-examined by prosecutors the next morning about allegedly murdering someone." A reasonable attorney would have objected. Therefore, the post-conviction court did not err in concluding that "[n]one of trial counsel's testimony indicated that there was a 'legitimate strategic or tactical reason for letting the instruction go.'"

I disagree as well with the State's contention that "it was objectively reasonable not to object" because trial counsel "was aware that [Mr.] Clark had the right to communicate with him during the recess . . . , but he had nothing he needed to communicate with [Mr.] Clark about." When asked why he didn't object, trial counsel responded that he felt no need because "I just didn't have anything to go over with him because I thought he was doing good on the witness stand." The State asserts that because "there is no evidence that [Mr.] Clark or his counsel intended or needed to communicate during the recess[,]" trial counsel acted reasonably in forgoing an objection.

But what matters here is that the right to effective assistance of counsel belonged solely to Mr. Clark. Just because "trial counsel may not have been aware of any need to consult with [Mr. Clark] overnight" doesn't mean that that was what Mr. Clark really wanted. As the post-conviction court emphasized, Mr. Clark may very well have desired to communicate with his lawyer during the overnight recess but was prevented from doing

so by the no-communication directive itself.[6] To require otherwise is to require him to disobey the court's order under pain of waiver. Trial counsel's assumption "that he was not obliged to object because Mr. Clark allegedly neither requested a post-trial meeting before or after his direct examination" stood in direct contrast with *Strickland*'s mandate that counsel function "as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. On this record, the post-conviction court found correctly that Mr. Clark met his burden of satisfying *Strickland*'s deficient performance prong.

> 2. *Because of trial counsel's failure to object to the court's no-communication directive, Mr. Clark was totally deprived of counsel. Therefore, prejudice is properly presumed.*

The State argues relatedly, and the majority agrees, that the post-conviction court erred in presuming that trial counsel's failure to object to the court's no-communication directive prejudiced Mr. Clark. But this position flows entirely from the view that no *Geders* violation occurred. Because "no perfected *Geders* error occurred," the State contends, there was no actual denial of the assistance of counsel. Because there was no actual denial of counsel, Mr. Clark "like most petitioners who allege ineffective assistance of counsel," carries the burden of proving *Strickland* prejudice. Therefore, the State says,

---

[6] In its reply brief, the State asserts that Mr. Clark's complaint "that the right to consultation belonged to him, and that it was impossible for [trial counsel] to know whether [Mr.] Clark wished to communicate with him" "might have more force if [Mr.] Clark had testified at the postconviction hearing that he wanted to consult with counsel during the overnight recess but had not attempted to do so due to the trial court's admonishment." And it's true that such testimony might have provided further evidence that trial counsel rendered deficient performance. But it's equally true that trial counsel's testimony *supported* the post-conviction court's finding that Mr. Clark satisfied the deficient performance prong of *Strickland*.

the post-conviction court's presumption of prejudice constituted reversible error. And the majority takes this an unnecessary step further—instead of holding simply that Mr. Clark's failure to object requires him to satisfy *Strickland*, the majority holds that *any* defendant ordered not to confer with counsel has to prove that they wanted to confer with counsel as a condition of proving their Sixth Amendment right was deprived:

> We hold that, although an order to the defendant not to discuss his or her testimony with anyone during an overnight recess is improper, it does not, by itself, constitute a deprivation of the right to counsel. Rather, to show that the instruction resulted in a violation of the defendant's Sixth Amendment right to counsel, there must be some evidence that there was a deprivation of the right to counsel. This evidence may be in the form of an objection to the court's instruction or some other evidence showing that the defendant wanted to speak with counsel and would have done so absent the instruction. In the absence of a showing of an actual deprivation of the Sixth Amendment right to counsel, the defendant is not entitled to a presumption of prejudice.

Slip op. at 16–17.

Put another way, the majority holds that the Sixth Amendment didn't entitle Mr. Clark to confer with his counsel during a murder trial—it entitled Mr. Clark to confer with his counsel only if he asked to. In the majority's formulation, the court can take away a defendant's right to counsel unless he proves that he planned to use it right then, never mind the court ordering him not to.

*Geders* says otherwise, but in any event I'm unwilling to view the right to counsel in conditional terms. And as I've already explained, a completed *Geders* violation occurred when the trial court issued its no-communication directive after Mr. Clark's direct testimony and deprived him of the right to confer with his counsel overnight. The Supreme

Court's statement in *Perry*—that its "citation of *Geders*" in the *Strickland* opinion "was intended to make clear that actual or constructive denial of the assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective"—drives the outcome here. *Perry*, 488 U.S. at 280 (cleaned up).

And that could end the analysis. But because there can be confusion about when post-conviction courts can presume prejudice (and thus bypass the second prong of *Strickland*), I'll walk through the rest of it.

I pick up with both *Strickland* and *Cronic*, in which the Supreme Court held unambiguously that when a criminal defendant is actually or constructively denied the assistance of counsel, prejudice is presumed. *See Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."); *Cronic*, 466 U.S. at 658–59 ("There are [] circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. Most obvious, of course, is the complete denial of counsel."). The majority and the State point to *Newton*, where, at the close of Mr. Newton's trial for attempted first-degree murder, the trial court informed the parties that it was "'open to any request that . . . the alternate [juror] go to the Jury Room with instructions not to participate . . . .'" 455 Md. at 348. The State and Mr. Newton's defense counsel both agreed to this arrangement. *Id.* After Mr. Newton was convicted and exhausted his direct appeals, he filed a petition for post-conviction relief and alleged that defense counsel "was ineffective because he failed to object to an alternate juror being present in the jury room during deliberations . . . ." *Id.*

at 350. The post-conviction court found that Mr. Newton was entitled to a new trial, but we reversed, and before the Court of Appeals, Mr. Newton asserted "that the alternate's presence during deliberations was structural error, and, therefore, prejudice is presumed . . . ." *Id.* at 352.

A quick detour to distinguish structural errors from trial errors. A structural error is "[a] defect in a trial mechanism or framework that, by deprivation of basic constitutional protections, taints the trial process, making it unreliable and rendering any punishment fundamentally unfair." Structural Error, Black's Law Dictionary (11th ed. 2019). Preserved structural errors are "per se prejudicial" and "require[] automatic reversal." *Id.* Unpreserved structural errors, however, "are not automatically reversible, but, instead, are subject to plain error review." *Savoy v. State*, 420 Md. 232, 243 n.4 (2011) (citations omitted). A trial error, on the other hand, is "[a] mistake in or deviation from proper trial procedure during the presentation of a case to a jury, usually without substantial or injurious effect or influence on the jury's decision-making process." Trial Error, Black's Law Dictionary (11th ed. 2019). Trial errors do "not require automatic reversal" and are thus "subject to harmless-error analysis . . . ." *Id.*

The Supreme Court has not considered expressly whether a *Geders* violation is a structural error or a trial error, and neither have our courts. But the Supreme Court has decided that the actual denial of assistance of counsel in general is structural error. *See, e.g.*, *Greer v. United States*, 141 S. Ct. 2090, 2100 (2021) (citations omitted); *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017); *United States v. Davila*, 569 U.S. 597, 599 (2013); *Johnson v. United States*, 520 U.S. 461, 468–69 (1997) (*citing Gideon v.*

34

*Wainwright*, 372 U.S. 335 (1963)). And so have Maryland's appellate courts. *See, e.g.*, *Newton v. State*, 455 Md. 341, 361 (2017); *Montgomery v. State*, 206 Md. App. 357, 373 (2012) (citations omitted); *Harris v. State*, 406 Md. 115, 130 (2008); *Redman v. State*, 363 Md. 298, 303 n.5 (2001).

Back to *Newton*: the Court of Appeals "analyze[d] how structural error interacts with a postconviction ineffective-assistance-of-counsel claim." 455 Md. at 353. The Court cited the Supreme Court's decision in *Weaver*, where Ms. Weaver had "argued that the presumption of prejudice due to a structural error—a violation of her public-trial right— satisfied *Strickland*'s prejudice prong." *Id.* at 356 (*citing Weaver*, 137 S. Ct. at 1911). The Supreme Court disagreed with Ms. Weaver and "assumed . . . that the prejudice prong could be satisfied if the attorney's errors were 'so serious as to render [the] trial fundamentally unfair[.]'" *Id.* (*quoting Weaver*, 137 S. Ct. at 1911). The Court of Appeals found the explanation from *Weaver* instructive—"that 'the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error.'" *Id.* (*quoting Weaver*, 137 S. Ct. at 1907). And based on this explanation, the Supreme Court in *Weaver* "explained that even though a public-trial right violation requires automatic reversal on direct appeal, it is still analyzed under the *Strickland* framework when raised as part of an ineffective-assistance-of-counsel claim." *Id.* at 356.

Applying the Supreme Court's reasoning in *Weaver* to Mr. Newton's case, the Court of Appeals held that "[a]lthough jury secrecy is important to ensuring that a criminal defendant has a fair trial, the presence of an alternate juror in deliberations does not clear

the high bar of fundamental unfairness—at least not in this case." *Id.* at 361. The Court went on to describe that "[t]he Supreme Court has found only a handful of circumstances that render a trial fundamentally unfair, including: the complete deprivation of counsel, *Gideon*, 372 U.S. at 343–44 . . . ." *Id.*

Two years after *Newton*, the Court of Appeals decided *Ramirez v. State*, 464 Md. 532 (2019). After being convicted of armed robbery and related charges, Mr. Ramirez sought post-conviction relief, "contending that trial counsel engaged in ineffective assistance of counsel by not moving to strike [a juror] for cause based on his response to [a] question and by not using a peremptory challenge against" the same juror. *Id.* at 540. On appeal after relief was denied, Mr. Ramirez argued "that the presumption of prejudice applies because his trial counsel caused structural error." *Id.* at 559. The Court of Appeals was tasked with determining "whether trial counsel's conduct fell below an objective standard of reasonableness, and, if so, whether a presumption of prejudice applies, or whether the petitioner must prove prejudice, where he alleges that trial counsel's conduct resulted in structural error." *Id.* at 539.

The Court of Appeals, referencing *Strickland* and *Cronic*, held that prejudice should be presumed "only if: (1) the petitioner was actually denied the assistance of counsel; (2) the petitioner was constructively denied the assistance of counsel; or (3) the petitioner's counsel had an actual conflict of interest." *Id.* at 573. "Absent these three circumstances, the presumption of prejudice does not apply, and the petitioner must prove prejudice." *Id.* The Court noted that it "has also recognized that the *Strickland* and *Cronic* presumption of prejudice does not apply simply because the petitioner alleges that [their] trial counsel

caused structural error." *Id.* at 575. The Court determined that the presumption of prejudice did not apply to Mr. Ramirez's case because "there was no actual or constructive denial of the assistance of counsel altogether . . . ." *Id.* at 577 (cleaned up).

The State relied on *Weaver*, *Newton*, and *Ramirez* to argue that the post-conviction court here committed reversible error "by failing to recognize that a 'different standard' applies to 'evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel.'" In conjunction, and although it acknowledges that prejudice is properly presumed if the defendant is actually denied the assistance of counsel, the State maintains, and the majority agrees, that Mr. Clark failed to demonstrate that he was actually denied the assistance of counsel. But public-trial right violations, a defense attorney's failure to object to the presence of an alternate juror during deliberations, and a defense attorney's failure to move to strike a juror for cause all are fundamentally different from failing to object to a trial court's order categorically forbidding a defendant to speak with their attorney during an overnight recess.

Again, Mr. Clark was, in fact, denied the assistance of counsel when the trial court instructed him that he could not communicate with trial counsel during the overnight recess. For those hours between the close of the fourth day of trial and the start of the fifth, Mr. Clark was completely and fully deprived of access to his attorney. It's possible that he or his counsel could have protested or negotiated some other intermediate arrangement, but they didn't, and the deprivation actually happened. The post-conviction court was correct in presuming that Mr. Clark was prejudiced by his trial counsel's failure to object to the

trial court's no-communication directive.

\*   \*   \*

Mr. Clark had the right to counsel throughout his trial, and never lost that right when the court ordered him not to confer with his counsel. But based on the majority's holding, his counsel's failure to preserve his right for him places him in the circularly impossible position of having to prove that he meant to use the right he already had in order to establish that the court deprived it—even though we know that the court's order in reality deprived him of any opportunity to confer with his lawyer overnight. The majority's analysis disengages Mr. Clark's rights from reality in a way that's inconsistent with the Supreme Court and Maryland cases establishing the higher constitutional principles. I would affirm the judgment of the post-conviction court and I dissent, respectfully, from the majority's decisions otherwise.